IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL W. AVIANO, LLOYD R. KNOWLES, and KENT H. RASMUSSEN,<br><br>Defendants. | |
| MICHAEL W. AVIANO, LLOYD R. KNOWLES, and KENT H. RASMUSSEN<br><br>Third-Party Plaintiffs,<br><br>v.<br><br>KIRTLAND, LLC<br><br>Third-Party Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:11-cv-00036-CW<br><br>Judge Clark Waddoups |
| KIRTLAND, LLC,<br><br>Plaintiff in Intervention,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION and SITUS SERV L.P.<br><br>Defendants in Intervention. | |

Before the court are the Federal Deposit Insurance Corporation's and Situs Serv L.P.'s

motions to dismiss Kirtland LLC's third-party complaint in intervention (Dkt. Nos. 85, 101), and

Kirtland's motion for summary judgment against Michael W. Aviano, Lloyd R. Knowles, and

Kent H. Rasmussen (Dkt. No. 84). The court held a hearing on the motions and permitted the

parties to submit supplemental briefing (Dkt. Nos. 119, 122). The court held a second hearing on

April 7, 2016 and took the motions under submission. The court has carefully considered the

briefing, arguments of the parties, pleadings, record evidence, and relevant authority. For the

following reasons, the court now GRANTS in part and DENIES in part the FDIC's motion to

dismiss (Dkt. No. 85), GRANTS Situs Serv's motion to dismiss (Dkt. No. 101), and GRANTS in

part and DENIES in part the FDIC's motion for summary judgment (Dkt. No. 84).

## I.       BACKGROUND

### A.  *Factual Background*[1]

This case arises out of Kirtland's efforts to develop a condominium complex in

downtown Salt Lake City (the Project). In March 2007, Kirtland secured funding from ANB

Financial in the form of a construction loan for $13,628,000, payable in draw requests. (Dkt. No.

85-1, p. 3). In exchange, ANB received a deed of trust against the Project as collateral security.

The loan was further secured by personal guaranties from three of Kirtland's principals: Michael

W. Aviano, Kent H. Rasmussen, and Lloyd R. Knowles (collectively, the Guarantors). (Dkt. No.

121-1). Kirtland then began construction on the Project. Unfortunately, things did not go as

planned.

In May 2008, in the midst of the financial crisis, ANB was placed into receivership with

the FDIC. (Dkt. No. 83, p. 4). The FDIC then stepped into ANB's shoes, carrying out ANB's

obligations pursuant to the loan agreement with Kirtland. It instructed Kirtland to continue

construction on the Project and assured Kirtland that it would honor draw requests for

---

[1] In reciting the facts, the court accepts as true the well-pleaded factual allegations contained in Kirtland's complaint in intervention.

construction costs. (*Id.*). The FDIC also informed Kirtland that there were interest reserves under the loan that were available to be used for the monthly payments. Thus, Kirtland was not required to make any additional payments during the time it would take to complete construction. (*Id.*, p. 5). Also during this period, the FDIC ordered an appraisal of the Project, which showed it would have a value of approximately $14,000,000 when complete. (*Id.*).

Kirtland continued construction, and on or about June 18, 2008, Kirtland submitted a draw request to the FDIC. It continued to submit draw requests throughout the summer. The FDIC did not pay these draw requests until September 24, 2008. As a result, Kirtland's general contractor threatened to walk off the job for non-payment and Kirtland was required to make payments to contractors from its own funds to keep construction progressing. (*Id.*, p. 5–6).

Kirtland delivered the final draw request to the FDIC on or about October 8, 2008. The FDIC then represented that the draw request would be paid by the end of the month and that the final draw request would be processed by Situs Serv L.P. (Situs), a company authorized by the FDIC to service the loan. (*Id.*, p. 6). Despite multiple representations by Situs that the FDIC would fund the final draw request, it never did. (*Id.*, p. 11).

In November 2008, Salt Lake City issued the Certificate of Occupancy for the Project and Kirtland hired a realtor to list the individual condo units for sale. Numerous interested parties contacted the realtor, and there was at least one offer to purchase one unit for $330,000. (*Id.*, p. 7). But Kirtland could not complete the sale of any individual units because, without payment of the final draw request, Kirtland had been unable to pay various contractors for the final work they had performed to complete the Project. This resulted in numerous mechanics' liens encumbering the Project's title. (*Id.*, at p. 11). At the time Kirtland completed construction in November 2008, approximately $600,000 remained in interest reserves for the loan. (*Id.*, p. 11).

In December 2008, Situs sent Kirtland a demand and notice of default. According to this demand, as of November 23, 2008, Kirtland was delinquent in the payment of the note. (Dkt. No. 84-9). Thus, Situs demanded that the Guarantors pay the total amount of Kirtland's indebtedness, which at that time was $12,733,034.10, including accrued interest and miscellaneous fees. (*Id.*).

After Situs declared the note to be in default, the parties continued to communicate about the Project, payment of the final draw request, and a potential workout/restructuring plan for the loan. For instance, in January 2009 employees of Situs met with Kirtland and toured the Project. Situs and the Guarantors, signing in their capacities as personal guarantors of the loan, also entered into a pre-negotiation agreement that purported to protect Situs from litigation as a result of any of its representations during these negotiations. No one signed the pre-negotiation agreement on behalf of Kirtland as an entity. (Dkt. No. 84-11). During this period, Situs represented that if Kirtland were to make an offer to purchase the Project for $4,500,000, Situs could arrange to have the FDIC approve the offer. Kirtland did so, but the FDIC rejected its proposal. (*Id.*). Subsequently, Situs represented to Kirtland that it could arrange to have the FDIC accept an offer from Kirtland to purchase the Project for $5,700,000. Again, when Kirtland submitted this offer to purchase the Project to the FDIC, the FDIC rejected it. (*Id.*, p. 12).

On or about March 10, 2009, Situs contacted Kirtland and told Kirtland that it had not received the final draw request funds from the FDIC and that Kirtland was required to sign a loan modification agreement before the final draw request would be paid. Kirtland refused to sign the loan modification agreement. (*Id.*, p. 10). Ultimately, Situs informed Kirtland that the Project would be sold at a foreclosure sale on February 11, 2011. Kirtland received an extension of time for the foreclosure sale and tried, unsuccessfully, to find a third-party purchaser. On March 26, 2011, the FDIC sold the Project at the foreclosure sale for $5,850,000. (*Id.*, p. 15).

### B. Procedural Background

The FDIC then filed suit in this court against the Guarantors seeking repayment of the loan pursuant to the personal guaranties. The FDIC did not join Kirtland in the suit. The FDIC now asks the court to grant it summary judgment on the basis that the Guarantors are obligated to repay the amounts advanced to Kirtland, plus interest and fees, pursuant to the loan agreement. Mr. Aviano has opposed the motion.[2] (Dkt. Nos. 84, 86). In turn, Kirtland filed a complaint in intervention against the FDIC and Situs, alleging that the FDIC breached the loan agreement and failed to act in good faith by refusing to make the final draw request. It also alleges unjust enrichment against the FDIC and that the FDIC breached an oral agreement to sell the Project to Kirtland. Finally, it asserts claims against the FDIC and Situs for promissory estoppel, fraud, negligent misrepresentation, and tortious interference for Situs's representations to Kirtland regarding the payment of draw requests and potential purchase of the Project. (Dkt. No. 83). For their part, both the FDIC and Situs have moved to dismiss the complaint in intervention. (Dkt. Nos. 85, 101). The court begins by considering the FDIC and Situs's motions to dismiss before turning to the FDIC's motion for summary judgment.

## II.      ANALYSIS

### A. The FDIC's Motion to Dismiss

The FDIC argues that the court should dismiss Kirtland's complaint in intervention for lack of jurisdiction and because Kirtland has failed to state a claim upon which relief can be granted. The court begins by assessing its jurisdiction before considering the sufficiency of the complaint.

---

[2] The FDIC originally sought repayment against Mr. Rasmussen and Mr. Knowles pursuant to their personal guaranties. The FDIC subsequently agreed to dismiss its claim against Mr. Rasmussen and the court granted judgment in the FDIC's favor against Mr. Knowles when he did not oppose the motion for summary judgment. (*See* Dkt. Nos. 100, 128). Thus, Mr. Aviano is the only Guarantor currently opposing the FDIC's motion.

### 1. Jurisdiction

The FDIC argues that the court lacks jurisdiction over this matter for three reasons: 1) the FDIC is entitled to governmental immunity against Kirtland's tort claims; 2) the court lacks jurisdiction under the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA); and 3) venue is improper. The court considers each argument in turn.

#### a. The FDIC is entitled to governmental immunity from Kirtland's tort claims.

The FDIC seeks to dismiss Kirtland's tort claims of fraud, negligent misrepresentation, and tortious interference with contracts for lack of subject matter jurisdiction. According to the FDIC, Kirtland's tort claims are barred because the United States—and therefore the FDIC— enjoys immunity from those claims. *See Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989) ("It is well settled that the United States and its employees, sued in their official capacities, are immune from suit, unless sovereign immunity has been waived.").[3] In response, Kirtland asserts that the FDIC has waived any defense of immunity from torts because Kirtland's claims are compulsory claims in recoupment. *See F.D.I.C. v. Hulsey*, 22 F.3d 1472, 1488 (10th Cir. 1994) (holding that when a sovereign sues, it waives immunity as to any counterclaims in recoupment). Kirtland's effort to avoid sovereign immunity by characterizing its tort claims as those in recoupment is not persuasive.

"Recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded." *Hulsey*, 22 F.3d at 1486; *accord* CLAIM IN RECOUPMENT, *Black's Law Dictionary* (10th ed. 2014) (defining a claim in recoupment as an

---

[3] The government has waived immunity for certain tort claims, allowing a plaintiff to bring suit so long as the plaintiff exhausts his administrative remedies under the Federal Tort Claims Act (FTCA). *Barnes v. United States*, 776 F.3d 1134, 1139 (10th Cir. 2015), *cert. denied*, 136 S. Ct. 1155 (2016). But this waiver of immunity under the FTCA is not applicable to Kirtland's tort claims. *See United States v. Neustadt*, 366 U.S. 696, 701 (1961) (recognizing that under the FTCA the government has not waived immunity for claims arising out of misrepresentations, deceit, or interference with contract rights). And in any event, it is undisputed that Kirtland did not pursue administrative remedies. Thus, the court cannot find a waiver of immunity on the basis of the FTCA.

obligor's counterclaim against the original payee of a negotiable instrument, arising from the transaction originally giving rise to the instrument). Accordingly, the Tenth Circuit has explained that in order to constitute a counterclaim in recoupment, "(1) the claim must arise from the same transaction or occurrence as the plaintiff's suit; (2) the claim must seek relief of the same kind or nature; and (3) the claim must seek an amount not in excess of the plaintiff's claim." *Hulsey*, 22 F.3d at 1487.[4] As for the first prong, a claim arises out of the same transaction or occurrence where "the issues of fact and law raised by the principal claim and the counterclaim are largely the same," "*res judicata* would bar a subsequent suit on defendant's claim," "the same evidence supports or refutes the principal claim and the counterclaim," and "there is a logical relationship between the claim and counterclaim." *Id.* at 1487. Consistent with these principles, the Tenth Circuit concluded in *Hulsey* that the defendant's counterclaims that arose out of the FDIC's actions taken in administering and collecting a loan and preserving the collateral securing the loan were claims in recoupment against the FDIC's action seeking to recover under the loan agreement and guaranty. But the Court explained that claims for fraud/intentional misrepresentation, constructive fraud/breach of fiduciary duty, and negligence related to a separate agreement between the underlying bank and the FDIC, which sought to "interject new controversies into the case," were not claims in recoupment over which the Court could exercise jurisdiction. *Id.*

Considering Kirtland's tort claims in light of *Hulsey*, the court finds that they are not compulsory claims in recoupment because they do not arise from the same transaction or occurrence that underlies the FDIC's suit. The FDIC's complaint seeks repayment of the loan agreement from the Guarantors, whereas Kirtland's tort claims do not arise out of that

---

[4] The court assumes, for Kirtland's benefit, that Kirtland's claims can be fairly characterized as counterclaims even though they arise from a third-party complaint in intervention. *Compare* Fed. R. Civ. P. 13(a)(2), (b), (c) (describing counterclaims), *with* Fed. R. Civ. P. 24 (describing intervention).

agreement. To the contrary, Kirtland's tort claims arise out of alleged communications between the FDIC and/or Situs and Kirtland regarding the FDIC's payment of draw requests and the potential purchase of the Project. But the legal implications of these various representations have little to do with the enforceability of the Guaranties or the loan agreement, which is the issue raised by the FDIC's suit.[5] Indeed, the misrepresentations are alleged to have occurred after the FDIC breached the loan agreement by failing to make the final draw request. Similarly, there is nothing to suggest that res judicata would bar Kirtland from subsequently bringing claims related to the FDIC and/or Situs's allegedly misleading statements if the FDIC were to prevail on its claim for payment against the Guarantors. Indeed, the legal and factual bases for the claims are entirely different. For these reasons, rather than arise from the same transaction or occurrence as the FDIC's claim for payment under the Guaranties, Kirtland's tort claims seek to interject new controversies into the case. They are therefore not compulsory counterclaims in recoupment for which the FDIC has waived immunity. For this reason, the court lacks subject matter jurisdiction over Kirtland's tort claims and dismisses the causes of action for fraud, negligent misrepresentation, and tortious interference against the FDIC accordingly.

> b. *FIRREA does not strip the court of subject matter jurisdiction over Kirtland's remaining claims.*

Having determined that the court lacks subject matter jurisdiction over Kirtland's tort claims against the FDIC, the court now considers whether FIRREA strips the court of jurisdiction over Kirtland's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of oral promise, and promissory estoppel. *See Bruce J. Pierce & Assocs., Inc. v. Resolution Trust Corp.*, 987 F.2d 663, 664 (10th Cir. 1993)

---

[5] As the court explains in more detail, *infra* section II.C, the amount the Guarantors owe as the result of the personal guaranties is not affected by any tort claims Kirtland might have against the FDIC.

(recognizing that failure to comply with FIRREA's claims process implicates the court's subject matter jurisdiction). The court concludes it does not.

In FIRREA, Congress established various statutory requirements for "claims" asserted against the FDIC acting as a receiver of a failed bank. Specifically, FIRREA provides that individuals with claims against a financial institution for which a receiver has been appointed must present their claims to the receiver "not less than 90 days after" notice that the institution has been placed in receivership. 12 U.S.C. § 1821(d)(3)(B). The FDIC may then evaluate the claim, and, within 180 days, determine whether to allow or disallow it. A claimant dissatisfied with the administrative claims process

> may request administrative review of the claim . . . or file suit on such claim . . . in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia.

*Id.* § 1821(d)(6). Failure of a plaintiff to follow the claims process generally precludes subsequent judicial review of that claim. *See id.* § 1821(d)(13)(D) ("[E]xcept as otherwise provided in this sub-section no court shall have jurisdiction over (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver . . . or (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.").[6]

Relying on this administrative framework, the FDIC contends the court lacks subject matter jurisdiction over Kirkland's complaint in intervention because the complaint raises "claims" that are required to comply with FIRREA's administrative claims procedure. Relatedly,

---

[6] Although this language would appear to be a complete jurisdictional bar to judicial review, courts have uniformly concluded that it is merely an exhaustion requirement. *Vill. of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 385 (6th Cir. 2008) ("[E]very court that has addressed the issue has interpreted § 1821(d)(13)(D) as imposing a statutory exhaustion requirement rather than an absolute bar to jurisdiction." (internal quotation marks omitted)).

the FDIC argues the court should dismiss the action on the basis that the lawsuit should have been brought in either Arkansas (ANB's principal place of business)[7] or the District of Columbia. These jurisdictional challenges fail.[8]

FIRREA does not define the "claims" that are required to comply with FIRREA's claims procedure outlined above. But the Tenth Circuit has declined to read the term expansively to require that a plaintiff comply with FIRREA in every case against a receiver of a failed institution. In *Homeland Stores, Inc. v. RTC*, the Court determined that "Congress intended those 'claims' barred by § 1821(d)(13)(D) to parallel those that were contemplated by, or could have been brought in its internal claims process." 17 F.3d 1269, 1273–74 (10th Cir. 1994). Thus, the Court held that FIRREA does not require exhaustion of claims against the FDIC when an individual seeks to assert claims against the FDIC that arise after the institution has entered receivership.[9] This is especially true when the claims are against the FDIC acting as a conservator rather than a receiver. *Id.* at 1275. The Court explained that to require exhaustion for claims arising post-receivership would raise serious due process concerns, *see id.* at 1274 & n.5,

---

[7] The FDIC's brief does not direct the court to any record support for this assertion. Nevertheless, Kirtland does not challenge this contention, and other courts recognized that ANB's principal place of business is in Arkansas. *See MTB Enterprises, Inc. v. ADC Venture 2011-2*, LLC, 780 F.3d 1256, 1259 n.1 (9th Cir. 2015). More importantly, Kirtland provides no evidence that would indicate that ANB's principal place of business is in Utah. *See Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."). Thus, for the purposes of assessing its jurisdiction, the court assumes that ANB's principal place of business is not in Utah.

[8] The FDIC frames its challenge to Kirtland's filing in Utah as one of improper venue. But the weight of authority from other jurisdictions reveals that FIRREA's venue provision implicates the court's subject matter jurisdiction. *See MTB Enterprises, Inc. v. ADC Venture 2011-2, LLC*, 780 F.3d 1256, 1257 (9th Cir. 2015). The court considers it as a jurisdictional question accordingly. If FIRREA's venue provision implicated the proper venue rather than the court's subject matter jurisdiction, as the court explains in detail later, *see infra* section II.A.1.c, the issue would be waived for failure to timely raise it.

[9] Some courts have criticized *Homeland Stores*' determination that FIRREA does not bar post-receivership claims. *See McCarthy v. F.D.I.C.*, 348 F.3d 1075, 1080 (9th Cir. 2003) ("Most circuit courts to consider this issue have determined that post-appointment claims against the FDIC are subject to FIRREA exhaustion. . . . Only the Tenth Circuit has gone the other way."). But *Homeland Stores* remains good law in this circuit and this court is bound to follow it unless and until it is overruled by the Tenth Circuit en banc or superseded by a contrary United States Supreme Court decision. *See United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990).

especially if the claim arose after the statutory period to seek administrative remedies had

elapsed. *Id.* at 1274 ("[o]bviously, claims . . . arising after receivership an in the indeterminate

future due to management actions of the [FDIC] cannot have been contemplated when such

deadlines for filing administrative claims were set"); *accord Stommel v. LNV Corp.*, No.

2:13CV821DAK, 2014 WL 1340676, at *4 (D. Utah Apr. 4, 2014) (holding that the plaintiff was

not required to exhaust administrative remedies prior to pursuing suit against the receiver for its

post-receivership actions in attempting to foreclose on her home). Thus, the Court held that the

plaintiff's claims against the RTC's post-receivership breach of a lease agreement were not

claims governed by FIRREA's claims procedure. Considering Kirtland's complaint in

intervention in light of *Homeland Stores*, the court concludes that FIRREA does not divest the

court of jurisdiction over Kirtland's remaining claims against the FDIC because they are not

claims subject to FIRREA's procedural requirements. This conclusion is particularly appropriate

where the conduct being challenged is the actions of the FDIC in managing the receivership asset

(the loan), as opposed to the conduct of the institution placed in receivership.

     First, as in *Homeland Stores*, all of Kirtland's claims against the FDIC are alleged to have

arisen after receivership, and importantly, after the period to file an administrative claim had

elapsed. Indeed, although the 90-day period elapsed in August 2008, (Dkt. No. 85-8, p. 2),

Kirtland's claim against the FDIC arose at the earliest in October 2008, when the FDIC is

alleged to have breached the loan agreement by failing to make the requested final draw.

Because Kirtland's claims arose after the time in which it could pursue its administrative

remedies against the FDIC, applying FIRREA's jurisdictional bar would deprive Kirtland of any

administrative or judicial forum.[10] And significantly, even the FDIC appears to have been

---

[10] The FDIC does not argue that it would have accepted Kirtland's claims filed after the 90-day period, potentially limiting due process concerns. *Cf. Heno v. F.D.I.C.*, 20 F.3d 1204, 1209 (1st Cir. 1994) (holding that a

operating with the understanding that FIRREA's administrative claims process applied only to claims against the FDIC for ANB's conduct, not to claims arising from the FDIC's own post-receivership conduct. It its notice of claim, the FDIC told Kirtland that it may have "a claim against the Failed Institution," outlined the administrative claims process, and advised Kirtland that "[i]f you do not have a claim *against the Failed Institution*, please disregard this notice." (Dkt. No. 85-8, pp. 2–3) (emphasis added).

Second, Kirtland pleads sufficient facts, which if taken as true, show that the FDIC was acting as a conservator rather than merely as a receiver on behalf of ANB. The Tenth Circuit has explained that "although the lines between the [receiver and conservator] functions may blur at times," the FDIC acts as a receiver when it "places the insured depository institution in liquidation and proceed[s] to realize upon the asset of the institution," and it acts as a conservator when it "take[s] such action as may be . . . necessary to put the insured depository institution in a sound and solvent condition and . . . appropriate to preserve and conserve the assets and property of the institution." *Homeland Stores*, 17 F.3d at 1275. Using this test, the Court determined that the receiver in *Homeland Stores* was acting primarily as a conservator when it began managing an asset pursuant to a lease agreement.

As in *Homeland Stores*, the facts alleged here permit the reasonable inference that the FDIC was also acting primarily as a conservator when it accepted and began managing Kirtland's loan and, pursuant to the loan agreement, paying out draw requests. Significantly, Kirtland's claims do not relate to any conduct of ANB. Kirtland is not a creditor of ANB, nor does it challenge any action ANB took in managing the loan. Rather, Kirtland's claims arise

---

party was required to exhaust its administrative remedies where the FDIC had construed FIRREA to permit late filings even by claimants who were on notice of FDIC's appointment but could not file their claim because it did not come into existence until after the bar date). In any event, such an argument appears to be contradicted by the plain language of 12 U.S.C. § 1821(d)(5)(C)(ii) (permitting late claims to be filed only if the claimant did not have notice of the appointment of the receiver and the claim is filed in time to permit payment).

exclusively against the FDIC from the FDIC's independent actions in allegedly failing to make the draw requests required by the loan agreement. *Homeland Stores* provides that in this circumstance, Kirtland's claim against the FDIC for its post-receivership actions are not claims governed by FIRREA's claims process. And when, as here, the FDIC is sued for its own conduct and not as a receiver of the failed institution under FIRREA's claims procedure, it may sue and be sued "in any court of law or equity, State or Federal." *See* 12 U.S.C. § 1819(a); *see also Hulsey*, 22 F.3d at 1480 (holding that FIRREA's "sue and be sued" clause constitutes a waiver of governmental immunity for breach of contract claims in the district court; therefore, borrower was not required to bring its breach of contract counterclaims against the FDIC in Claims Court). This challenge to this court's jurisdiction fails accordingly.

      *c.   Venue in Utah is proper because the FDIC failed to raise a timely challenge to venue.*

      Because the court has determined that it has subject matter jurisdiction over Kirtland's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of oral promise, and promissory estoppel, it now considers whether venue in the District of Utah is proper. In a response to supplemental briefing submitted by Kirtland in opposition to the FDIC's motion to dismiss, the FDIC argues that Utah is not the proper venue because Kirtland should have brought its claims in Arkansas, ANB's principal place of business. (Dkt. No. 122, p. 12). In support, the FDIC points to the venue provision of the National Banking Act, which provides that

> [a]ny action or proceeding against a national banking association for which the Federal Deposit Insurance Corporation has been appointed receiver, or against the Federal Deposit Insurance Corporation as receiver of such association, shall be brought in the district or territorial court of the United States held within the district in which that association's principal place of business is located.

12 U.S.C. § 94. In response, Kirtland claims that the FDIC has waived any challenge to venue in the District of Utah because this argument was not raised in the FDIC's motion to dismiss. *See* Fed. R. Civ. P. 12(h) (recognizing that a motion to dismiss based on improper venue must be raised in the first Rule 12 motion). The court agrees with Kirtland.

It is clearly established that the venue provision of the National Banking Act implicates traditional notions of the proper venue of an action against the FDIC, a privilege that may be waived or lost by failure to timely assert it. *See*, *e.g.*, *Michigan Nat. Bank v. Robertson*, 372 U.S. 591, 594 (1963), *see also* Norris D. Wolff, *National Banks and the Vanishing Venue Defense*, 97 BANKING L.J. 245, 247–48 (1980) (citing Rule 12(h) and recognizing that "[i]nitially, it must be noted that when a national bank is sued in a federal court outside the district in which it is established, it can waive the venue objection and proceed with the litigation in the forum chosen by plaintiff"). Thus, the FDIC's initial failure to challenge venue in Utah on the basis of § 94 waives any such challenge to venue now.

Indeed, the FDIC's venue argument did not appear until the FDIC filed responsive supplemental briefing almost a year after it submitted its motion to dismiss. At this point, the motion to dismiss had been fully briefed and argued. *Cf. Fed. Deposit Ins. Corp. v. Hartford Ins. Co. of Ill.*, 877 F.2d 590, 591 (7th Cir. 1989) ("Although the initial motion did not mention venue, the United States supplemented its contentions before the district court took up the matter and so avoided forfeiting the venue point under Fed. R. Civ. P. 12(h)(1)."). And notably, the argument came in response to Kirtland's submission of supplemental authority. Thus, there is no motion for the court to grant that raises venue as a basis for dismissal. The FDIC's belated venue challenge is therefore neither timely nor does it present a legitimate ground for dismissal. Venue in the District of Utah is proper.

## 2. The Sufficiency of Kirtland's Claims against the FDIC

The court has determined that venue is proper and that it has jurisdiction to consider Kirtland's causes of action against the FDIC for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of oral promise, and promissory estoppel. Thus, the court proceeds to consider the legal sufficiency of these causes of action under Utah law.[11] To survive a motion to dismiss, each of Kirtland's claims against the FDIC must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the complaint, the court must "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (citation omitted). But it won't accept the nonmoving party's legal conclusions as true. *Iqbal*, 556 U.S. at 678. In particular, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citations and internal quotation marks omitted).

### a. Breach of Contract

Kirtland alleges the FDIC breached the loan agreement by failing to make the final draw request, declaring the note to be in default, and demanding that Kirtland sign a loan modification agreement to obtain the final draw request. In response, the FDIC asserts that it had no obligation to continue making draw requests after the loan's maturity date, which it argues was on May 23, 2008. According to the FDIC, upon the maturity date, Kirtland had the obligation to pay the loan in full and its failure to do so constituted an event of default. Moreover, the FDIC argues that Kirtland has failed to allege damages, a necessary element of a breach of contract claim, because

---

[11] The parties agree that Utah law governs the legal sufficiency of Kirtland's causes of action. (*See* Dkt. Nos. 85, 89); *see also F.D.I.C. v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir. 1994) (applying Oklahoma law to consider various claims against the FDIC).

its claims are pled as those in recoupment. Considering the complaint in intervention in the light most favorable to Kirtland, the court finds that Kirtland has stated a plausible claim against the FDIC for breach of contract.

The promissory note states that Kirtland will be in default if it fails to make a payment on time or in the amount due or otherwise fails to pay or keep any promise on any debt it owes to ANB. (Dkt. No. 85-1, p. 3). Upon default, ANB may refuse to make advances or demand immediate payment of Kirtland's obligations under the note, including the principal, unpaid interest, and other accrued charges. (*Id.*). Moreover, the loan agreement provides that in the event of default, ANB "shall be relieved of any and all further obligation to advance funds to [Kirtland] as herein provided and all sums advanced at the time of such default shall be immediately due." (Dkt. No. 85-1).[12] Thus, the FDIC—when standing in the shoes of ANB— was contractually obligated to continue making draw requests unless there was a prior event of default. But contrary to the FDIC's argument, the court cannot conclude at this stage of the proceedings that Kirtland was in default prior to making the final draw request.

Indeed, the complaint and its supporting documents contain no allegations evidencing that Kirtland was in default on the loan in May 2008 or at any other time prior to the final draw request.[13] And Kirtland has plausibly alleged facts that would show it was not in default at that time. For example, it claims that in May 2008 the FDIC informed Kirtland that it should continue

---

[12] Although generally the sufficiency of a complaint must rest on its contents alone, the court can also consider: "(1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity; and (3) matters of which a court may take judicial notice." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). The court considers the loan agreement and promissory note accordingly.

[13] The note provides a maturity date of March 2013. But even the FDIC concedes that the balance of the loan was not due on that date. To the extent the FDIC wishes to rely on various documented extensions to place the maturity date on May 23, 2008, that would require the court to impermissibly look beyond the complaint in intervention to documents that are neither incorporated by reference nor referred to in the complaint. If the court were not constrained to consider the complaint and documents that were incorporated by reference, the fact that the Situs's notice of default lists November 23, 2008 as the loan delinquency date would appear to create an issue of fact as to the date of Kirtland's default.

construction and need not make any additional payments because there were interest reserves under the loan that were available to be used for the monthly payments. Moreover, the FDIC made a payment on the June 2008 draw request in September 2008. And in November 2008 when the Project was completed, there was still approximately $600,000 in interest reserves available to cover any necessary interest payments. Finally, Kirtland avers that long after May 2008, the FDIC and/or Situs continued to represent that the final draw request would be paid. (Dkt. No. 83, pp. 6, 11). These allegations, if taken as true, are inconsistent with an event of default in May 2008.[14] The court cannot conclude as a matter of law that the FDIC was relieved of its obligation to fund the final draw request without a clear indication from the complaint that Kirtland was in default at that time.

Moreover, the court is convinced that Kirtland has pled sufficient damages to survive dismissal. Although the FDIC is correct that Kirtland technically captioned its claims as those in recoupment, the court cannot rely on the labels plaintiff uses in evaluating the legitimacy of a cause of action. Instead, the court must look at all of the well-pleaded facts contained in the complaint. *Dronsejko v. Thornton*, 632 F.3d 658, 666 (10th Cir. 2011) ("We must . . . view the entire complaint, and not just individual allegations in isolation."). Here, Kirtland alleges it could have sold at least one condominium unit for $330,000 when the Certificate of Occupancy was issued in November 2008. But because the FDIC had not made the final draw request, the Project had been encumbered by mechanics' liens. If the FDIC were contractually required to make the final draw request in October 2008 as Kirtland alleges, certainly this fact would support a finding

---

[14] The court recognizes that the note provides that if the FDIC waives its right to declare an event to be a default, it does not waive its right to later consider the event as a default if it continues or happens again. (Dkt. No. 85-2, p. 3). But as explained, the facts alleged in the complaint do not establish that Kirtland was in default at some time prior to October 2008. Perhaps the FDIC will be able to provide factual support for the applicability of this provision, but at this stage of the litigation, the court is bound by the allegations in the complaint.

that Kirtland was damaged as a result of the FIDC's breach of this obligation. For these reasons, the FDIC is not entitled to dismissal of Kirtland's breach of contract claim.

### b.   Breach of the Implied Covenant of Good Faith and Fair Dealing

Kirtland also alleges that the FDIC breached the implied covenant of good faith and fair dealing when it failed to make the final draw request. In response, the FDIC contends that the loan agreement and promissory note expressly disclaim any obligation to fund draw requests after May 2008. Thus, the FDIC asks the court to dismiss Kirtland's good faith claim on this basis. The court is not convinced.

The FDIC is correct that the implied covenant of good faith and fair dealing cannot be invoked to "create obligations inconsistent with express contractual terms." *Young Living Essential Oils, LC v. Marin*, 266 P.3d 814, 817 (Utah 2011). But as explained, the express contractual terms of the loan gave the FDIC the right to cease funding draw requests only upon Kirtland's default. Because the FDIC cannot establish at this stage that Kirtland was in default prior to the FDIC's decision not to fund the draw request, Kirtland may have a plausible claim that the FDIC's failure to continue funding breached the implied covenant "not to intentionally do anything to injure [Kirtland's] right to receive the benefits" of the loan agreement. *Markham v. Bradley*, 173 P.3d 865 (Utah App. 2007). The claim is supported further by allegations that long after the FDIC asserts Kirtland was in default, the FDIC or its agent repeatedly promised Kirtland that the final draw request payment would made. Accordingly, Kirtland's claim that the FDIC breached the implied covenant of good faith and fair dealing survives the motion to dismiss.

### c. *Unjust Enrichment*

Unlike Kirtland's contractual claims, the court finds that Kirtland has failed to allege facts that would show a plausible claim for unjust enrichment. To establish a claim for unjust enrichment, Kirtland must plead facts that, if taken as true, establish three elements: "(1) a benefit conferred . . .; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention [of the benefit] by the conferee . . . under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *U.S. Fid. v. U.S. Sports Specialty*, 270 P.3d 464, 468 (Utah 2012). But because "unjust enrichment is designed to provide an equitable remedy where one does not exist at law, the doctrine may be invoked only when no express contract is present that governs the remedies available to an injured party." *Id.* (internal quotation marks and brackets omitted). "[W]here an express contract covering the subject matter of the litigation exists, recovery for unjust enrichment is not available." *Id.* at 468–69. When the court considers Kirtland's complaint in intervention under these standards, it is apparent that Kirtland's claim for unjust enrichment fails.

Rather than provide sufficient factual allegations to state a plausible claim for unjust enrichment, Kirtland's allegations related to this claim are merely conclusory. For instance, Kirtland alleges that "[b]y reason of the FDIC's conduct towards Kirtland after the Receivership Date, the FDIC has been unjustly enriched." (Dkt. No. 83, p. 20). Notably absent from the complaint are any specific factual allegations regarding how the FDIC had been unjustly enriched. Kirtland identifies no benefit the FDIC received as a result of its failure to pay the draw requests. To the contrary, the complaint in intervention alleges that the FDIC ultimately sold the Project at far less than the original loan amount. Kirtland does not explain how the FDIC's ultimate sale of the Project at a loss could have conferred on the FDIC a benefit, that the FDIC

has retained any benefit, or that the circumstances of this case warrant application of this equitable remedy.

In addition, Kirtland's claim for unjust enrichment suffers from another fundamental problem: Kirtland's complaint identifies an express contract—in the form of the loan agreement and promissory note—that governed the obligations of the FDIC in making post-receivership draw requests. Where Kirtland has alleged a plausible claim that the FDIC breached its express contractual obligations, it cannot proceed seeking extra-contractual remedies related to these deficiencies. For these reasons, the FDIC is entitled to dismissal of Kirtland's claim for unjust enrichment.

### d.  Breach of an Oral Agreement to Sell the Project

Similarly, Kirtland's claim that the FDIC breached its oral promise (made through its agent Situs) to allow Kirtland to purchase the Project fails.[15] Formation of a contract requires an offer, an acceptance, and consideration. *Cea v. Hoffman*, 276 P.3d 1178, 1185 (Utah 2012). An offer is a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to the bargain is invited and will conclude it." *Id.* 1185 (internal quotation marks omitted). "For an offer to be one that would create a valid and binding contract, its terms must be definite and unambiguous." *DCM Inv. Corp. v. Pinecrest Inv. Co.*, 34 P.3d 785 (Utah 2001). In other words, the obligations of the parties must be "set forth with sufficient definiteness that the contract can be performed." *Id.* (internal quotation marks and brackets omitted). Ultimately, it is the burden of the "proponent of the contract . . . [to] show [] that an offer and acceptance" occurred. *Cea*, 276 P.3d at 1178. Here, Kirtland has not met its burden to plausibly allege a binding oral contract for the sale of the Project.

---

[15] The court assumes, for the purposes of analysis only, that Situs's representations can bind the FDIC. But as the FDIC points out, Kirtland also asks the court to hold Situs independently liable, apparently retreating from any sort of agency theory of liability.

The communications between Situs and Kirtland do not evidence a manifestation of mutual asset to the material terms of any agreement for the sale of the Project. For example, the complaint alleges that Situs "offered and promised Kirtland that if Kirtland *were to make an offer* . . . to purchase the Project . . . Situs *could arrange* to have this offer approved by the FDIC." (Dkt No. 83, p. 21 (emphasis added)). But this type of hypothetical discussion about a future offer that Kirtland could make to the FDIC does not contain the type of definite and unambiguous terms that would justify Kirtland in understanding that its assent to the bargain would conclude the deal. Likewise, Kirtland's allegation that Situs "offered and promised Kirtland that the FDIC would accept an offer of $5,700,000" and "Kirtland forwarded its acceptance of the offer to Situs" is too vague to show a binding contract. Specifically, it lacks the factual detail required for the court to determine what the material terms of the bargain were and if the parties manifested a mutual asset to those terms. For these reasons, the complaint fails to state a plausible claim that the FDIC breached its oral contract to sell the Project to Kirtland.[16]

     *e. Promissory Estoppel*

Kirtland's claim for promissory estoppel against the FDIC also fails to survive a 12(b)(6) analysis. The Utah Supreme Court has explained that promissory estoppel "contemplates circumstances where a party promises that things will be a given way in the future, knowing at the time of the promise all of the material facts, but is ultimately wrong, and where the other relied on that promise in acting (or withholding action)." *Youngblood v. Auto-Owners Ins. Co.*, 158 P.3d 1088, 1092 (Utah 2007). Accordingly, to make out a case of promissory estoppel, Kirtland must plead sufficient facts to show that "(1) [it] acted with prudence and in reasonable reliance on a promise made by the [FDIC]; (2) [the FDIC] knew that [Kirtland] had relied on the

---

[16] Because the court concludes that Kirtland's claim is deficient on its face, it does not consider the FDIC's argument that the claim is barred by the statute of frauds.

promise which the [FDIC] should reasonably expect to induce action or forbearance . . .; (3) the [FDIC] was aware of all material facts; and (4) [Kirtland] relied on the promise and the reliance resulted in a loss." *Id.* (internal citations, quotation marks, and brackets omitted). Kirtland fails to provide sufficient factual allegations to satisfy these elements.

Kirtland's allegations in support of its promissory estoppel claim are virtually identical to those raised in its claim that the FDIC breached an oral agreement to sell the Project to Kirtland for various sums. But fatal to Kirtland's promissory estoppel claim is its failure to plead any facts that would support detrimental reliance, the forth element of promissory estoppel. Indeed, Kirtland's only claim for detrimental reliance consists of conclusory allegations, insufficient to survive a motion to dismiss. For instance, Kirtland alleges that it "relied on the conduct of the FDIC, through its agent, . . . to Kirtland's detriment and injury" and "[a]s a result of the foregoing actions and promises by the FDIC through its authorized agent, . . . Kirtland has suffered both general and consequential damages." (Dkt. No. 83, p. 25). These types of legal conclusions, devoid of any factual support, are insufficient to establish a cognizable promissory estoppel claim.[17] And the complaint in intervention contains no facts to suggest Kirtland took any action to its detriment or otherwise changed its position because of the FDIC's alleged promise that Kirtland could purchase the Project. At best, Kirtland alleges—in other sections of its complaint—that it waited patiently for the FDIC to approve its offer to purchase the project, thereby foregoing other avenues to satisfy the loan. But Kirtland does not explain how it was injured through its decision to wait patiently, nor does it provide any factual detail regarding exactly what other avenues were available to it. Accordingly, Kirtland's promissory estoppel claim fails.

---

[17] Tellingly, at the hearing on the motion Kirtland's counsel was unable to direct the court to any allegation in the complaint that would support a finding of detrimental reliance.

In sum, Kirtland has sufficiently alleged claims for breach of contract and breach of the implied covenant of good faith and fair dealing related to the FDIC's failure to make the final draw request. But the FDIC is entitled to dismissal of Kirtland's claims for unjust enrichment, breach of an oral agreement to sell the Project, and promissory estoppel because Kirtland has failed to state a claim for these causes of action.

### B.  Situs's Motion to Dismiss

In addition to bringing the claims detailed above against the FDIC, Kirtland asserts claims against Situs for promissory estoppel, fraud, negligent misrepresentation, and tortious interference with contracts for Situs's alleged representations to Kirtland about the loan and potential to purchase the Project.[18] In response, Situs asserts that 1) the pre-negotiation agreement precludes Kirtland from bringing any claims against Situs for Situs's conduct in servicing the loan, and 2) each of Kirtland's claims fail to state a claim upon which relief can be granted. The court agrees with Situs that Kirtland has failed to allege any plausible claims against it.[19]

### a.  Promissory Estoppel

The court need not labor long on Kirtland's promissory estoppel claim against Situs because it is identical to Kirtland's claim against the FDIC. As explained, Kirtland fails to allege any facts that would support the conclusion that it relied to its detriment on any representation

---

[18] The court assumes, for the purposes of analysis only, that Situs was not acting on behalf of the FDIC, such that it can be independently liable. But it is difficult to conceive, even by inference, that any of the representations made by Situs with reference to the loan or Project would be outside the scope of its authority. Moreover, with respect to the tort claims, if Situs were acting as an agent of the FDIC, it would likely be entitled to the same immunity from tort as the FDIC. See supra II.A.1.a; see Tsosie v. United States, 452 F.3d 1161, 1163 (10th Cir. 2006) (explaining that the FTCA permits suit against government officers and employees in some circumstances and that independent contractors and their employees are wholly immune from suit under the FTCA).

[19] The court notes its skepticism of Situs's argument that the pre-negotiation agreement binds Kirtland, when it was signed by the Guarantors in their individual capacities and never signed by anyone on behalf of Kirtland as an entity. (Dkt. No. 107-5). Perhaps the Guarantors were capable of binding Kirtland, but such a finding is inappropriate at the motion to dismiss stage. The court need not resolve this issue, however, because even setting the pre-negotiation agreement aside, each of Kirtland's claims against Situs fail to state a cognizable claim.

Situs made regarding the potential purchase of the Project from the FDIC. Thus, Situs is entitled to dismissal of this claim.

### b. Fraud

Kirtland claims that Situs misrepresented to Kirtland that the FDIC would make the final draw request and that the FDIC may be willing to sell the Project to Kirtland for various sums. To establish that these representations constitute fraud, Kirtland must plead the following elements:

> (1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage.

*Giusti v. Sterling Wentworth Corp.*, 201 P.3d 966, 977 n.38 (Utah 2009). Moreover, the relevant facts surrounding these elements "must be set forth with sufficient particularity to show what facts are claimed to constitute such charges." *Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003) (internal quotation marks omitted). Considering the complaint in intervention under these standards, Kirtland has failed to plead sufficient facts to establish a plausible fraud claim.

For instance, Kirtland refers generically to various representations but does not provide any detail regarding those representations. The complaint does not identify speakers, listeners, places, or times the alleged representations took place. Likewise, beyond conclusory allegations, Kirtland fails to allege facts that would show that Situs—acting as the FDIC's agent or otherwise—made representations for the improper purpose of inducing Kirtland to act upon them. And like its promissory estoppel claims, Kirtland fails to allege facts to show exactly how it relied on any representations to its detriment. For all these reasons, Kirtland's fraud claim fails.

### c.   Negligent Misrepresentation

As with its fraud claim, Kirtland alleges that Situs negligently misrepresented to Kirtland

that the FDIC would make the final draw request and would accept an offer to purchase the

Project. To survive dismissal on this cause of action, Kirtland must allege facts that would

plausibly support the following elements:

> (1) the plaintiff[ ] reasonably relied on the defendant's representation, (2) the
> representation constitutes a careless or negligent misrepresentation of a material
> fact, (3) the defendant had a pecuniary interest in the transaction, (4) the
> defendant was in a superior position to know the material facts, and (5) the
> defendant should have reasonably foreseen that the injured party was likely to rely
> upon the misrepresentation.

*Mitchell v. Smith*, No. 1:08-CV-103 TS, 2010 WL 5172906, at *8 (D. Utah Dec. 14, 2010)

(internal quotation marks omitted) (quoting *Price–Orem Inv. Co. v. Rollins, Brown & Gunnel,*

*Inc.*, 713 P.2d 55, 59 (Utah 1986)). Kirtland fails to allege sufficient facts to establish a colorable

negligent misrepresentation claim.

For example, Kirtland fails to allege facts to show that it reasonably relied to its detriment

on these representations. As explained, generic allegations that Kirtland waited patiently for the

FDIC to act rather than pursing other avenues for satisfying the loan do not suffice, particularly

where there is no indication that there were other avenues of funding available. And in the

absence of any factual allegations to show that Kirtland could have successfully pursued other

funding, there is nothing to suggest that Situs should have reasonably foreseen that Kirtland

would have changed its position in reliance on any of Situs's alleged representations. For these

reasons, Kirtland's negligent misrepresentation claim fails.

### d.   Tortious Interference

Finally, Kirtland alleges that Situs tortiously interfered with its contracts to sell individual

condominium units in the complex. To prevail on a tortious interference claim, Kirtland must

show: "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) by improper means, (3) causing injury to the plaintiff." *Eldridge v. Johndrow*, 345 P.3d 553, 565 (Utah 2015) (ellipses omitted). Kirtland's complaint in intervention fails to plead sufficient facts to survive a motion to dismiss on this claim.

For the most part, Kirtland merely recites the elements of the tort rather than providing the factual allegations necessary to make out a plausible claim. For example, although the complaint asserts that Kirtland could have sold at least one condo unit for $330,000 upon completion of the Project, it does not explain how Situs's representation that the FDIC would make the final draw request interfered with this contract. Nor does Kirtland make any effort to identify exactly what improper means Situs used to accomplish this interference, *see Anderson Dev. Co. v. Tobias*, 116 P.3d 323, 331 (Utah 2005) (holding that to establish the second element, improper means, a plaintiff must show "that the defendant's means of interference were contrary to statutory, regulatory, or common law or violated an established standard of a trade or profession" (internal quotation marks omitted)), or how Situs's representations to Kirtland caused the sale to fall through. Tellingly, Kirtland alleges in other parts of the complaint that the condo sales were blocked, not because of any action by Situs, but because the FDIC's failure to pay the final draw request caused the Project to become encumbered by mechanics' liens. But Kirtland does not explain how Situs's representations caused the Project to become encumbered. For these reasons, Kirtland has not alleged a plausible claim for tortious interference.

### C. The FDIC's Motion for Summary Judgment

The court turns now to the FDIC's motion for summary judgment against the Guarantors—specifically Mr. Aviano—for payment of amounts advanced to Kirtland by ANB

and the FDIC. The FDIC's request that the court find that Mr. Aviano is liable on the basis of his personal guaranty is well taken. But issues of fact remain as to the amount of the judgment.

Under the loan agreement, ANB promised to loan Kirtland the sum of $13,628,000, which would be advanced periodically for the duration of the loan. Kirtland evidenced the agreement by executing the promissory note and secured the loan with the deed of trust to the Project. (Dkt. No. 85-1, 85-2, 85-3). In turn, Mr. Aviano signed a personal guaranty (the Guaranty) in which he unconditionally promised to pay "the following described debt(s): Promissory Note # 128040173 In the Amount of $13,628,000.00." (Dkt. No. 121-1). The Guaranty provides further that "[n]o act or thing need occur to establish the liability of [Mr. Aviano], and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate [Mr. Aviano] or modify, reduce, limit or release the liability of [Mr. Aviano] hereunder." (Dkt. No. 121-1, p. 2). Mr. Aviano also agreed to "waive[] any and all defenses, claims and discharges of [Kirtland] . . . pertaining to the indebtedness, except the defense of discharge by payment in full." (*Id.*, p. 3). Specifically included in this waiver are the defenses of fraud or setoff "available against Lender to [Kirtland] . . . whether or not on account of a related transaction." (*Id.*). Thus, by the Guaranty's plain terms, Mr. Aviano is liable for the full amount of the sums Kirtland owes the FDIC in connection with the loan, regardless of any claims or defenses Kirtland may have against the FDIC. Indeed, that is the purpose of an unconditional personal guaranty: that the lender will have its money returned without having to resort to expensive means of recovery from the borrower.

Despite breadth and scope of the unconditional Guaranty, Mr. Aviano attempts to avoid liability by arguing that the amount of indebtedness Kirtland owes to the FDIC should be discounted by the amount of any damage to the Project caused by the FDIC's conduct. Relatedly,

he claims that the amount of indebtedness should be offset by any claims for damages Kirtland might have against the FDIC. According to Mr. Aviano, once these sums are taken into account, the loan has been "paid in full" because, as a result of the FDIC's conduct, there is no outstanding balance on the loan.[20] (Dkt. No. 86, p. 25–26). The court disagrees.

The court cannot interpret the phrases "indebtedness" or "paid in full" to include any potential setoff through Kirtland's claims against the FDIC. To do so would impermissibly write out the explicit waivers of the defenses of impairment of collateral or setoff contained in the Guaranty. *See LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 858 (Utah 1988) ("[I]t is axiomatic that a contract should be interpreted so as to harmonize all of its provisions and all of its terms, which terms should be given effect if it is possible to do so."). Instead, the court must read the Guaranty as a whole in an effort to harmonize all material provisions. *See id.* When the court engages in that exercise here, it is evident that the amount of indebtedness under the Guaranty contemplates the sums advanced pursuant to the promissory note and any related costs, not considering any setoff for damages the FDIC might owe Kirtland. Further, the defense of payment in full plainly contemplates a circumstance in which the lender has received compensation for the total amount of indebtedness, not an amount discounted by any potential claims by the borrower or because the collateral has been impaired. Accordingly, the FDIC is entitled to judgment on its claim against Mr. Aviano for the amounts advanced to Kirtland and the associated costs and fees, irrespective of the claims Kirtland may have against the FDIC.

---

[20] In supplemental briefing, Mr. Aviano also argued that the FDIC's fraudulent conduct alleged in Kirtland's complaint in intervention created "a purported obligation which he would not otherwise have incurred," thereby invalidating the debt entirely. (Dkt. No. 118, p. 3). But Mr. Aviano provides no authority for the position that fraud that occurs after a contract's formation, as is alleged here, can retroactively invalidate a contract. *Cf. Mecham v. Benson*, 590 P.2d 304, 307–08 (Utah 1979) ("Traditionally, a person who has been fraudulently *induced to enter into* a contract has either of two remedies; he could rescind the transaction tendering back what he has received and suing for what he has parted with; or, he may affirm the transaction and maintain an action in deceit." (emphasis added)).

Having determined that Mr. Aviano is personally obligated to pay Kirtland's indebtedness under the loan, the court proceeds to consider the appropriate amount. It is undisputed that ANB and the FDIC, collectively, advanced Kirtland $11,860,256.91.[21] But what is not clear from this record are the amounts the FDIC may be have received to satisfy the indebtedness, through a commercially reasonable sale of the Project or otherwise. *See* Utah Code Ann. § 57-1-32; *see also Sur. Life Ins. Co. v. Smith*, 892 P.2d 1, 2 (Utah 1995) (holding that if a property securing indebtedness is sold at a foreclosure sale, the court must credit the guarantor with the fair market value of the property as of the date of the sale). Also unclear is the amount of interest Mr. Aviano may owe on the balance of the loan, because resolution of Kirtland's contractual claims against the FDIC may determine whether the interest should or should not be at the default rate. Thus, the court declines to enter judgment in the FDIC's favor pending further evidence establishing the amount due on the note, i.e., the amount advanced plus appropriate interest and fees, minus any sums to be credited upon the sale of the collateral to satisfy the indebtedness.

### III.    CONCLUSION

For the foregoing reasons, the court **GRANTS** in part and **DENIES** in part the FDIC's motion to dismiss (Dkt. No. 85) and **GRANTS** Situs's motion to dismiss (Dkt. No. 101). The court also **GRANTS** the FDIC's motion for summary judgment that Mr. Aviano is liable under the Guaranties but **DENIES** summary judgment as to the amount to be awarded (Dkt. No. 84). The dismissal of Kirtland's claims against the FDIC and Situs is without prejudice.

SO ORDERED this 3rd day of May, 2016.

---

[21] Although the parties initially agreed that ANB had advanced the full amount of credit ($13,628,000) (*see* Dkt. No. 86, p. 3), the FDIC subsequently clarified that ANB and the FDIC advanced, respectively, approximately $7,556,000 and $4,304,260 to Kirtland, for a total of $11,860,260. (Dkt. No. 121; *see also* Dkt. No. 84-9 (reflecting that the principal balance of the loan is $11,860,256.91).

BY THE COURT:

Clark Waddoups
United States District Court Judge